## W. H. Shanks, Auditor, etc. v. Cornett-Lewis Coal Company.

(Decided March 4, 1927 )

### Appeal from Franklin Circuit Court.

Master and Servant—Statutes do Not Require Own Risk Employers to Pay Tax for Maintenance Fund, where Surplus Exceeds $60,000 (Ky. Stats., 1922, Sections 4229, 4968-7 to 4968-9).—Ky. Stats., 1922, section 4968-8, providing that own risk employers shall pay a maintenance fund tax of 2 per cent. of basic premiums chargeable against similar industry, and section 4968-9, that such tax shall not be assessed for the maintenance fund when on June 30th of any year it exceeds $60,000, but that such tax shall be payable to state treasury for the general fund, excludes own risk employers from paying such percentage when the designated surplus is in the maintenance fund, in view of Stats., sections 4229, 4968-7.

F. E. DAUGHERTY, Attorney General, and O. S. HOGAN, Assistant Attorney General, for appellant.

ROBERT T. CALDWELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The sole question involved in this litigation is the proper interpretation and application of section 4968-8

and 4968-9 of our present statutes as amended by chapter 37, Acts of 1920, page 163. As so amended those sections read:

"4968-8.    Every employer carrying his own risk under the provisions of section 4946 shall, under oath, report to the board his payroll subject to the provisions of this act. Such report shall be made in form prescribed by the board and at the time herein provided for premium reports by insurer. The board shall assess against such payroll a maintenance fund tax computed by taking two per cent (2%) of the basic premiums chargeable against the same or most similar industry or business, taken from manual insurance rates for compensation then in force in this state."

"4968-9.    The board shall not be authorized to incur expenses or indebtedness during any period chargeable against the maintenance fund, in excess of the premium tax payable to such fund for the same period. If it be ascertained that the total net surplus to the credit of the maintenance fund of June thirtieth of any year exceeds the sum of sixty thousand dollars ($60,000.00) no tax provided for under any part of this section shall be assessed or collected that year *for the benefit or maintenance of said fund,* and the tax upon the premiums under this act which would otherwise have been payable for the maintenance of said fund shall be payable into the state treasury to be credited to the general fund." (Our italics).

This action was brought by appellee and plaintiff below, Cornett-Lewis Coal Company, against the Auditor of Public Accounts, the appellant and defendant below, W. H. Shanks, to require him to pay plaintiff the 2% collections mistakenly made by it when at the time there was a net surplus in the "maintenance fund" of more than $60,000.00, it being an employer carrying its own risk under the provisions of section 4946 of the statute and a part of the compensation act, and that under the provisions of section 4968-9 it, under such circumstances, was not required to pay any part of the 2% assessment based on its payroll to the compensation board, the auditor or anyone else; nor could it be required to pay any part of such per cent until the net surplus in the maintenance fund on June 30 of each year was below $60,000.00.

In other words, plaintiff insists that the language in section 4968-9, saying, ''and the tax upon premiums under this act which would otherwise have been payable for the maintenance of said fund shall be payable into the state treasury to be credited to the general fund,'' applies only to *insurance* carriers of risks under compensation act and not to an employer *carrying his own risk* under the provisions of section 4946 *supra*. The learned circuit judge of the trial court adopted the construction of plaintiff and rendered judgment accordingly, followed by this appeal by the auditor to this court.

Section 4968 of the statutes says: ''For the purpose of paying the salaries and necessary expenses of the board and its assistants and employees in administering and carrying out the provisions of this act, an administrative fund shall be created and maintained in the following manner.'' The two immediately following sections prescribed for the payment of a tax of 2% of the gross premiums collected by the carriers of risk insurance under contracts with the employer by all persons, partnerships, associations and corporations engaged in the business in this commonwealth of issuing such policies, and which percentage is based upon reports required to be made by such risk carriers to the commissioner of insurance for the commonwealth; and, as will be seen, section 4968-9 *supra,* exacts from the employer carrying his own risk a like per cent of the basic premium charges on the same or similar industry that he would have had to pay as a premium to a policy risk carrier had he taken out such insurance, and which is to be ascertained from reports that he is required to make, not to the insurance commissioner of the commonwealth, but to the compensation board. The auditor, representing the commonwealth, contends that the various sections and provisions of the statutes contemplated and clearly indicate that it was the intention of the legislature in enacting them to require, under the latter portion of section 4968-9, the employer carrying his own risk to pay the 2% required of him, which is based on his payroll reports, each and every year, notwithstanding there may be at the end of any one year a net surplus in the maintenance fund of more than $60,000.00, and that when such surplus does exist the 2% required to be paid by the uninsured employer goes into the general fund of the commonwealth the same as does the 2% on premiums paid by the *insurance carriers* under like circumstances; while plaintiff contends to the con-

trary, and which, as we have seen, was the judgment of the trial court.

A reading of section 4968 and all of its subsections, down to and including 4968-9 of the statutes, will disclose that the percentage collections therein required to be made for the maintenance fund as applied to the insurance carrier, is denominated "taxes on such premiums" or "premium tax;" while the percentage required to be collected for the same purpose from the employer carrying his own risk is *not* referred to as "taxes on premiums" or as "premium taxes," but it is referred to as "a maintenance fund tax," but the primary purpose of levying and collecting each of them is the creation of the "maintenance fund." When on June 30 of each year there is an unexpended balance in that fund of $60,000.00 or more, then under the provisions of section 4968-9 "no taxation provided for under any part of this section shall be assessed or collected that year for the *benefit or maintenance* of said fund." There immediately follows the requirement embodied in the excerpt above, to the effect that, notwithstanding such unexpended surplus, "the tax *upon premiums* under this act which would otherwise have been payable for the maintenance of said fund shall be payable into the state treasury to be credited to the general fund." (Our italics). The literal language then is, that when there is such surplus maintenance fund at the specified time only the tax "upon the premiums" shall, nevertheless, be collected and become a part of the general fund of the state treasury; there being no express requirement that the *tax fund* computed on the payroll of the employer carrying his own risk shall also be paid into the treasury when there is such a net surplus in the maintenance fund. It follows, therefore, that a literal interpretation of the crucial language in section 4968-9 would seem to exclude employers carrying their own risk from paying such percentage when the designated surplus was in the maintenance fund.

That interpretation is to our minds fortified when viewed in the light of section 4968-7, saying: "Any insurance carrier liable to pay a tax upon premiums under this act shall not be liable to pay any other or further tax upon such premiums, or on account thereof, under any other law of this state." Section 4229 of our present statutes provides for the payment of 2% on premiums collected by certain classes of insurance companies doing business in this state (and which is broad enough

to include *risk carriers* under the compensation act), and which is to be paid into the state treasury as a sort of license or privilege tax. It would seem then that it was evidently the purpose of section 4968-7. *supra*, to exclude risk insurance carrriers under the compensation act from the payment of the (same) percentage tax imposed by section 4229 *supra*, which, if not so done would have created double taxation against that class of insurance and to require that, in lieu of the taxes imposed by the latter section, the payment of the same taxation under the compensation act (section 4968-1) and which so far as might be necessary should go to the creation of the maintenance fund, but when unnecessary for that purpose it should nevertheless be paid by the insurance carrier, not as a part of such fund but into the general fund of the state treasury in lieu of all other tax upon *premiums* "under any other law of this state." By such provision for the continued collection of the 2% *after* the maximum surplus of the maintenance fund had been reached, no discrimination is or was made in favor of such insurance risk carriers under the compensation act as against other insurance risk carriers. On the contrary, they would thereby be placed upon an exact equality with all other insurance companies required to pay the tax under section 4229. Not so with an employer carrying his own risk. In such case it is equitable, just and proper that he should contribute his *pro rata* part toward the maintenance of the administrative machinery of the compensation act; but, if, after doing that he would still be required to continue to pay the levied percentage assessed for that purpose and such payments turned into the general fund of the state treasury, he would then be subjected to a tax based upon no other ground than that he was an employer of the requisite number of employes to come within the provisions of the compensation act, and had accepted it.

We do not think such a construction was contemplated by the legislature and the contrary view does not have the effect to relieve the own-risk carrier from contributing his just proportion to the maintenance fund, since if there should be a surplus in excess of $60,000.00 or more on the 30th day of June in any year, then neither the premiums of the risk carriers, nor the payroll of the employer carrying his own risk would contribute any sum to that fund for the succeeding year; nor until the

surplus fund at the end of any year was below the $60,-000.00 when each of them would be required to again pay his respective percentage assessments into it. If the total sum so collected would not be expended for the current year in which it was collected and at the end of it there was another surplus of $60,000.00 or more, then neither of them would pay anything for the next year. However, in the meantime and in any event the *insurance* carrier would nevertheless be required to pay his 2% on premiums into the state treasury, because by doing so, under section 4968-7 *supra,* he would be relieved of paying the same tax that he would otherwise be required to pay under section 4229 *supra.*

Viewed from any angle we can arrive at no other conclusion than the one adopted by the trial court, and the judgment is accordingly affirmed. Whole court sitting.